IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSE LUNA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 4:21-CV-457-Y |
| | § | |
| BOBBIE LUMPKIN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jose Luna, a state prisoner, against Bobbie Lumpkin, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. FACTUAL AND PROCEDURAL HISTORY**

**A. Procedural history**

Luna is in custody pursuant to a judgment and sentence of the 213th District Court of Tarrant County, Texas, in cause number 1479170D, styled *The State of Texas v. Jose Luna*. (Clerk's R. 143 doc. 13-5.) Luna was charged in this case with theft of property, in an amount greater than $1,500 but less than $20,000. (*Id*. at 7.)

A jury found him guilty. (*Id.* at 141; state habeas record (SHR) at 5-6, 43.) On July 11, 2018, the trial court sentenced Luna to nine years in prison. (*Id.* at 141.)

The Court of Appeals for the Second District of Texas affirmed the trial court's judgment. *Luna v. State*, No. 02-18-00335-CR, 2019 WL 6904552 (Tex. App.—Fort Worth Dec. 19, 2019, pet. ref'd) (mem. op., not designated for publication). The Texas Court of Criminal Appeals ("TCCA") refused discretionary review on April 22, 2020. *Luna v. State*, No. PD-0123-20.

Luna's state habeas application challenging his conviction was file stamped on January 20,2021. (SHR at 11, doc. 13-26.)[1] The trial court issued findings, conclusions and a recommendation to deny the state application. (SHR 67-80, doc. 13-26.) On March 10, 2021, the TCCA denied the application without written order based on the findings of the trial court and its own independent review. SHR at "Action Taken" page 1, doc. 13-25.) Luna then filed the instant federal habeas petition. (Pet. 10, ECF No. 1.)

**B.   Facts**

The intermediate appellate court summarized the background and evidence in this case as follows:

> **Dao Le**
>
> Le testified that in February 2014, she contacted F1 Contractors to repair a home she was selling in Euless.

---

[1]"SHR"" refers to clerk's record of documents filed in the state habeas proceedings, No. WR-92,380-01.

2

She got the contractor's name from her realtor, and when she called she talked to, and later texted with, "Jay." They agreed to a price of $180 with a $140 down payment. "Jay" gave Le a bank account name and number so that she could drive to the bank and deposit the $140 directly; the account she deposited the money into was in Luna's name. The work was to be completed by March 8 or 9, 2014. Le got an offer to buy the house on the 8th, but when she drove by the house, no work had been done. She tried to contact "Jay" but got no response. Her realtor was then able to contact "Jay," who promised that the repairs would be done before the home inspection on March 11. The repairs were not completed by the inspection time, and the inspector noted in his report the broken items that were supposed to have been repaired.

Le spoke with "Jay" again on the 13th and asked him to make additional repairs noted by the inspector. She paid him $300, which she also deposited directly into Luna's account. The repairs were to be completed by March 14 because the sale's closing was scheduled for March 21. The work was not done, and "Jay" would not respond to messages from Le or her realtor. Le had to pay someone else to complete the work.

**Sharon Johnson**

Johnson needed work done on some of her income-producing properties, so she responded to an F1 Contractor's email that she believed was targeted to realtors. She talked to Luna, who told her that he would contact her via FaceTime at the duplex she owned, look at the areas that needed work, and give her an estimate. She showed Luna her property via a Face Time call on March 5, 2014, and he gave her an estimate for the work. But she did not give him a check until she met with his associate, Jay, on March 10, 2014. She wrote the check to Jose Luna, which she questioned because it was not the company's name, but Jay told her to make out the check that way. The check, which she had designated "Deposit only," cleared the same day.

Although work was supposed to start a couple of days after payment, no work was done. When Johnson contacted Luna, he told her "[t]hat Jay had fallen off the grid and he couldn't find him." She called Luna again after some time had passed, and he told her "not to worry, that . . . he would do the job, and everything would be fine."

3

Johnson finally had to report Luna to the police because he never did any of the promised work.

**Detective Whitlock**

North Richland Hills police detective Eric Whitlock testified that he was assigned to investigate Johnson's report on March 25, 2014. He initially was able to access a website for F1 Contractors, but when he tried to access it a second time, it was no longer valid. He determined that F1 Contractors, although purporting to have an address in Dallas, had no City of Dallas licenses and was not registered with the City of Dallas. Whitlock testified about how Johnson had identified Luna in a photo lineup.

While investigating, Whitlock discovered what had happened to Le. He also subpoenaed the bank records for the account into which Johnson's check was deposited. He matched the driver's license and birthdate information from the account to Luna. He also saw that Le's $300 check and Johnson's $4,800 check had been deposited into that account. Whitlock also scrutinized the debit withdrawals from the account: only two--$238 and $28.68--were for a home improvement store, and those charges were made before the Johnson and Le deposits. The majority of the rest were for "personal entertainment," such as liquor and clothing, and were made in other states.

Whitlock could not find Jay, whom he identified as Jamael Bradley, but he believed Luna was the "primary offender" because the full amounts of Le's $300 and Johnson's $4,800 checks were deposited into Luna's account. Luna's name was the only one associated with the account. Nothing in his investigation showed that Jay kept any of those funds for himself or that money was transferred from Luna's account to any other account. Whitlock's investigation also showed that someone had created additional websites--F1 Pro, F1 Build, and "all other sorts of variations of the original name."

Whitlock discovered other people from whom Luna had taken money or property for work he never performed. Using a photograph of a vehicle driven by Jay (taken by Johnson's boyfriend), Whitlock discovered that Luna had done something similar to Lori Ward, Lisa Hildinger, and Ronald Weber.

4

Weber testified that in January 2014 he contacted Efficient Contractors to replace carpet, repair walls, and paint to prepare his home for sale "by a certain time"; he spoke with Luna. Weber set up a meeting with Luna, but a different person showed up instead: a "[y]oung guy, about 25, tall, thin African American." The man carried a tablet, through which Weber communicated with Luna via video conference. That day, Weber and Luna settled on a total price, including a down payment of $1,500.

The next night, Weber wrote a check for that amount to "Jose Luna" and put it under his doormat; the check was gone the next morning. Two days later, the check cleared Weber's bank. A copy of the cancelled check was admitted into evidence; it showed that the check had been deposited into Luna's bank account.

Luna never did any of the agreed-upon work. Initially, he did not respond to Weber's phone calls and voice mails, but when Weber called him from an anonymous number, Luna answered and told Weber he could not do the work according to the agreed-upon schedule. Luna asked to reschedule for several weeks to a month later, but Weber told him that would not work with his schedule and asked for a refund. Luna initially refused to give Weber a refund, but he later texted Weber and promised to write him a check for the full amount. Weber never received a check from Luna.

Lisa Hildinger testified that she contacted Efficient Contractors in January 2014 to replace windows at a home she intended to move into. She talked to Luna and scheduled a date to meet with him; the "project manager" showed up instead, and she spoke to Luna via FaceTime. Luna quoted her a price for the work and asked for the entire amount up front; he also refused to take a credit card. Hildinger wrote a check for half the amount instead and gave it to the project manager that day. She then got nervous and called her bank to try to stop payment, but the check had been cashed about a half hour after the project manager left her.

Although Luna emailed Hildinger that the windows would be installed in February, he stopped answering her calls. Hildinger was able to get Luna to talk to her again by telling him she wanted an estimate for additional work. Again, the project manager met with her,

5

and she spoke to Luna via FaceTime. Luna told her the windows would be delayed for five days from his original estimated installment date. She never heard from Luna again, and he never performed any work. Hildinger reported Luna to the police, and he was charged in Denton County. In October 2017,Hildinger agreed with prosecutors to drop the charges in exchange for Luna's repaying her.

    Lori Ward, a realtor and house flipper, testified that in early September 2013 she contacted Luna after getting an "e-blast"; she was considering adding an addition to her personal home. He met with her the next day and gave her an estimate. Luna was driving a sports car, and Ward asked him why he did not have a truck; he said he had wrecked his truck, and the sports car was a rental. As a down payment, she offered him either a truck or Ford Explorer, both of which her husband was selling, and he chose the Explorer. Her husband was eager to sell both, so they let Luna--whom she verified by his driver's license--take the Explorer with him that day. The trial court admitted a picture that Ward had taken of Luna's driver's license the day she met with him. Three days after their initial meeting, Luna brought a CAD drawing to her house and asked for a $4,200 down payment so that he could buy supplies; she wrote him a check, which cleared her bank the same day. Although the work was supposed to be finished by October 30, Luna did not have the plans approved by the city until November. Over the next several months, he gave Ward varying excuses for the delay in beginning work. Although some workers did "set the form boards and put the rebar in" in January, Luna did not do any other work. He stopped communicating with Ward in February 2014. By contacting the Plano police, she was able to get her Explorer back but not the $4,200.

*Luna*, 2019 WL 6904552, at **2-4 (footnotes omitted).

## II. ISSUES

Luna alleges the following grounds for relief:

1. The indictment failed to adequately allege a crime and lacked specificity.

2. The trial court erred by admitting evidence of extraneous offenses during the guilt phase.

3. The evidence is legally insufficient to support his

6

>   conviction.
>
>   4. Trial counsel rendered ineffective assistance by failing to object to the indictment, interview witnesses, and call Jamille Bradley to testify.

(Pet. 6-7, doc. 1.)

### III. RULE 5 STATEMENT

Respondent does not contend that Luna's claims are time-barred under 28 U.S.C. § 2244(d), or that his petition is subject to the successive petition bar, 28 U.S.C. § 2244(b). (Resp't's Answer 8, doc. 12.) But Respondent does assert that Luna's claim that counsel was ineffective for failing to object to the indictment is unexhausted and procedurally barred. (*Id.*)

### IV.  STANDARD OF REVIEW

A section 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Id.* § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington,* 562 U.S. at 102.

7

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to both express and implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, it is considered an adjudication on the merits, which is likewise entitled to this presumption of correctness. *Harrington,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018). If there is no related state-court decision providing the courts' reasoning, a federal court may imply fact findings consistent with the courts' disposition of the

claims, assume that the state courts applied the proper clearly established federal law to the facts of the case, and then determine whether the state courts' decision was contrary to or an objectively unreasonable application of that law. 28 U.S.C.A. § 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006); *Valdez v. Cockrell,* 274 F.3d 914, 948 n.11 (5th Cir. 2001). A federal court defers to and accepts a state court's interpretation of its own law, unless that interpretation violates the United States Constitution. *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998).

## V. ANALYSIS

### A.  Claim that the Indictment was Insufficient (Ground One)

Luna alleges that his indictment was insufficient because it lacked specificity and failed to allege a crime. (Pet. 6, doc. 1.) But Luna's allegation challenging the legitimacy of his indictment fails to state a federal constitutional violation and should be dismissed. In this regard, "[t]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins* 12 F.3d 66,68 (5th Cir. 1994)(citing *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980)). Further, the Fifth Circuit held ". . . that the district court would be required to accord due deference to the state courts'

9

interpretations of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *Id.* at 69 (citing *Moreno v. Estelle*, 717 F.2d 171 (5th Cir. 1983)). The court also found that "[t]he question whether a defective state indictment confers jurisdiction on the state trial court is a matter of state law. *Id.* (Citation omitted.)

In the instant case, Luna raised this claim on direct appeal and the appellate court found that the allegations in the indictment "were sufficiently specific to allow Luna to discern the offense alleged; thus, the indictment was not so defective that it deprived the trial court of jurisdiction." *Luna*, 2019 WL 6904552, at **1-2 (citations omitted). The Texas Court of Criminal Appeals refused discretionary review and denied Luna's state habeas application. (SHR at "Action Taken" page 1, doc. 13-25.)

Because the indictment in this case was sufficient under state law, Luna's claims raised in this federal proceeding regarding that indictment must be denied. *McKay*, 12 F.3d at 68-69; *see also Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988) ("[i]f the question of the sufficiency of the indictment is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas proceedings")(citing *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)).

Finally, Luna has not shown that the state court's rejection of his claim conflicts with clearly established federal law as

10

determined by the Supreme Court or was "based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d). Consequently, Luna's first ground for relief must be denied.

### B. Claim that Trial Court Erred by Admitting Extraneous Offenses (Ground Two)

Luna contends in his second claim that the trial court erred by admitting evidence of extraneous offenses during the guilt phase. (Pet. 6, doc. 1.) This claim is without merit and Luna has failed to overcome AEDPA deference.

Generally, a state court's evidentiary rulings are not cognizable on federal habeas review. See *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007). Relief is warranted only if such rulings violate a specific constitutional right or constitute a denial of fundamental fairness under the Due Process Clause. *See Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). And even if a ruling is found to be of constitutional dimension, a petitioner must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *See Janecka v. Cockrell*, 301 F.3d 316, 328–29 (5th Cir. 2002)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). To determine whether a petitioner has proven a "substantial and injurious effect," courts consider: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the

11

testimony; and (4) the overall strength of the prosecution's case. *See Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994)(citations omitted).

Here, Luna has only challenged the state court's evidentiary ruling on state-law grounds; he has not demonstrated the court's ruling violated a specific constitutional right or constituted a denial of fundamental fairness under the Due Process Clause. Therefore, his claim is not cognizable on federal habeas review. *Wood*, 503 F.3d at 414. Furthermore, the intermediate appellate court found the extraneous offenses were admissible under state law. *Luna*, 2019 WL 6904552, at **5-6. Moreover, the admission of evidence showing an extraneous offense does not violate due process if the government makes a strong showing the defendant committed the offense and the offense is rationally connected to the charged offense. *Wood*, 503 F.3d at 414 (citations omitted). Luna has failed to overcome this standard.

Ultimately, Luna again fails to overcome AEDPA's deferential standard of review because he cannot demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court. As such, Luna's second ground for relief must be denied.

**C.   Claim that Evidence was Legally Insufficient (Ground Three)**

Luna's third claim is that the evidence was legally

12

insufficient to support his conviction. (Pet. 7, doc. 1.) This ground also lacks merit, and Luna again fails to overcome the AEDPA's deferential standard of review.

In *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), the Supreme Court set forth the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* All credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995)(citing *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994)). Finally, a federal habeas court is required to give great deference to a state court's determination of the sufficiency of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993)(citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985)).

Luna challenged the sufficiency of the evidence on direct appeal, and the intermediate appellate court rejected his claim

13

after thoroughly outlining the evidence. *Luna*, 2019 WL 6904552, at **2-5. That court provided the following analysis:

> Luna argues on appeal that the evidence is insufficient because all the evidence shows that Jay received the checks and there is no direct proof of who made the withdrawals from Luna's account. He also contends there is no proof that he lacked the intent to complete the work.
>
> The State's evidence was circumstantial. But circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). The jury could have reasonably inferred an intent to appropriate property from Luna's pattern of estimating a price for work, obtaining as much money up front as quickly as possible--whether personally or through an emissary-- avoiding contact and failing to perform work after receiving the money, and spending the money on items unrelated to materials related to that work. All the evidence shows that Le's $300 and Johnson's $4,800 were deposited into an account associated with Luna by driver's license and birthdate. We conclude that the evidence was sufficient to support the conviction. *See Johnson v. State*, 560 S.W.3d 224, 229-30 (Tex. Crim. App. 2018).

*Id.* at *5 (footnote omitted).

Luna's challenge to the sufficiency of the evidence is without merit for the reasons outlined by the state appellate court. He has not overcome AEDPA's deferential standard of review because he has failed to demonstrate that the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court. He has not shown an unreasonable factual determination. Luna is not entitled to relief because he cannot show "that the state court's ruling on the claim being presented in federal court [is] so

14

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 561 U.S. at 103. As a result, the Court finds that Luna's third ground for relief must be denied.

**D.    Ineffective Assistance of Counsel(Ground Four)**

Luna alleges in his last ground for relief that counsel rendered ineffective assistance in three ways: failing to object to the indictment; failing to interview witnesses; and failing to call Jamille Bradley to testify. (Pet. 7, doc. 1.)

      i.    *Strickland* Standard of Review under the AEDPA

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be

15

highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Harrington,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15(2013)(quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

    ii.  <u>Failure to Object to the Indictment</u>

Luna first ineffective claim is that trial counsel failed to object to the indictment. Because Luna did not present this claim in a petition for discretionary review (PDR) following direct appeal or upon state habeas review, and it would now be barred from review, the claim is unexhausted and procedurally barred. *See Neville v. Dretke*, 423 F.3d 474, 478–80 (5th Cir. 2005); *see also* Tex. Code Crim. Proc. 11.07 § 4. Luna has not argued any exception to the procedural bar.

Nonetheless, Luna did raise the underlying claim concerning the indictment on direct appeal, where it was found to be without

16

merit. *Luna*, 2019 WL 6904552, at **1-2. Luna fails to show how counsel was deficient for failing to raise this claim or demonstrate that he was prejudiced by counsel's actions given that the claim would have failed.

    iii.   <u>Failure to Interview and Call Witnesses</u>

Luna's claim that counsel was ineffective for failing to interview or call witnesses is conclusory. A conclusory allegation does not state a claim for federal habeas corpus relief and is subject to summary dismissal. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1093). Furthermore, Luna raised this claim during the state habeas proceedings and it was rejected with the adoption of the following detailed findings of fact and conclusions of law:

> *Findings of Fact*
>
> 29. Applicant fails to show what additional interviews would have revealed that reasonably could have changed the result of his case. *See* Application, p. 12.
>
> 30. Although Applicant lists Jamille Bradley as a witness who should have been interviewed, he does not make any showing of what the interview would have revealed that reasonably could have changed the result of his case. *See* Application, p. 12.
>
> 31. Applicant fails to show that, but for his counsels's alleged deficient conduct, there is a reasonable probability that the results of his trial would have been different. *See* Application, p. 12.
>
> 32. There is no evidence that Applicant's counsel was ineffective.
>
> 33. There is no evidence that Applicant's was prejudiced by his counsels's representation.

17

> . . . .
>
> *Conclusions of Law*
>
> 28. A claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd)(citing *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994)).
> . . . .
>
> 32. Applicant failed to prove that additional interviews would have revealed evidence that reasonably could have changed the result of his case.
>
> 33. Although Applicant lists Jamille Bradley as a witness who should have been interviewed, Applicant failed to prove that the interview would have revealed evidence that reasonably could have changed the result of his case.
>
> 34. Applicant failed to prove that, but for his counsels's alleged deficient conduct, there is a reasonable probability that the results of his trial would have been different.
>
> 35. Applicant failed to meet his burden to prove that his counsel were ineffective. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).
>
> 36. Applicant failed to meet his burden to prove that he was prejudiced by the conduct of his counsel. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

(SHR at 70–71, 74–75, doc. 13-26.) Luna's claims lack merit for the same reasons provided by the state habeas court.

More importantly, Luna again fails to overcome AEDPA's deferential standard of review, 28 U.S.C. § 2254(d), because he has failed to demonstrate that the state court's rejection of his ineffective assistance claims was contrary to, or an unreasonable

18

application of, clearly established federal law as established by the Supreme Court.

Therefore, the Court finds that Luna's fourth ground for relief, asserting several claims that counsel provided ineffective assistance of counsel, is denied.

## VI. Conclusion

For all of the reasons discussed, the Court DENIES Luna's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue "only if the [Petitioner] has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district

19

court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Luna has not made a showing that reasonable jurists would question this Court's resolution of his constitutional claims and/or procedural rulings. Therefore, a certificate of appealability should not issue.

 SIGNED February 25, 2022.

              _____
              TERRY R. MEANS
              UNITED STATES DISTRICT JUDGE